# EXHIBIT 1

# RHODE ISLAND
# TILE, TERRAZZO, AND
# MARBLE AGREEMENT

***Between the***

## INTERNATIONAL UNION OF
## BRICKLAYERS AND ALLIED CRAFTWORKERS
## LOCAL # 1 RHODE ISLAND

***and the***

## CERAMIC TILE, MARBLE AND
## TERRAZZO CONTRACTORS ASSOCIATION OF
## RHODE ISLAND

***September 1, 2001 to August 31, 2005***

# TABLE OF CONTENTS

**SUBJECT** **PAGE NO.**


Annuity Fund ....39,40
Apprentices ....11,30,32,33,34,35
Apprentice Wage Rates ....34,35
Arbitration ....41,42
Auto Insurance ....25
Coffee Breaks ....29
Conditions ....27,28,29,30
Contractor Bonding ....26,27
Deputy Foreman ....28
Dues Check-Off ....12,13,14,15,16,17
Employment ....10,11,12
Employment Recall ....7
Epoxy Grouting ....30
Equal Employment Opportunity ....11,12
Expiration Agreement ....42
Foreman & Conditions ....27,28,29,30
Fringe Benefit Delinquencies ....40,41
Geographical Jurisdiction ....1,2
Health and Welfare Fund ....37,38
Hiring Ratio ....27
Holidays ....20,21
Hours of Work ....19,20,21
Injury Pay ....26
International Masonry Institute ....35,36,37
Jurisdictional Disputes ....9,10,32,33
Layoff ....24,25,27
Marble Masonry ....2,3,4
Mosaic and Terrazzo Work ....4,5,6,7
Overtime ....19,20,21
Parking Reimbursement ....25
Parties ....1
Pay Day ....24,25,26
Pension Fund ....29,30,31,32,38,39,40,41
Perpetuity Clause ....43
Pre-Job Conference ....29,30
Preservation of Work ....17,18
Ratio of Employment ....27
Room and Board ....22,23,24,25
Safety ....31,32
Shop Steward ....30
Show-Up Pay ....24

# TABLE OF CONTENTS

**SUBJECT** **PAGE NO.**


**Subcontracting** ........17
**Territorial Jurisdiction** ........1,2
**Tile Layers Work** ........7,8,9
**Tolls** ........25
**Tools** ........26,30
**Tool Reimbursement** ........36
**Trade Jurisdiction** ........1,2,3,4,5,6,7,8
**Transportation** ........23
**Travel Pay** ........22,23,24
**Traveling Contractors** ........19
**Unified Trust Fund** ........40
**Union Security** ........10,11,12
**Wages** ........19,20,21,22
**Workers Compensation** ........25

**INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS LOCAL # 1 RHODE ISLAND**

**and**

**CERAMIC TILE, MARBLE AND TERRAZZO CONTRACTORS ASSOCIATION OF RHODE ISLAND AGREEMENT**

**INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFT-WORKERS LOCAL #1 RHODE ISLAND, herein called "Union", and CERAMIC TILE, MARBLE AND TERRAZZO CONTRACTORS ASSOCIATION OF RHODE ISLAND, sometimes herein called "Contractors" or "Association", for its individual members for whom it is the authorized collective bargaining representative, have entered into this Agreement on the 11th day of September, to be effective September 1, 2001 and expire on August 31, 2005.**

## ARTICLE I - JURISDICTION

**1. This Agreement shall be effective and binding on the parties herto throughout the State of Rhode Island.**

**2. The work jurisdiction which the Union claims is that work which has been historically, traditionally, or contractually, assigned or will be assigned to the organization and which includes the building, constructing, fabricating, erecting, cleaning, maintaining, repairing, renovating, sealing, caulking, waterproofing, acid proofing, application of chemical products to,**

**and all other work to or upon walls, floors, ceilings, roofs, decks, roads, paving and other objects or structural, building or construction components consisting wholly or partially of masonry, and all forms of substitute materials thereto; the laying, setting, installation or application of all such materials; the preparation of all structures, objects or components to receive such materials; and all work servicing, assisting, or relating to the processes or materials described above from manufacture of the materials through construction and maintenance of the structure or object.**

**3. MARBLE MASONRY: This Agreement pertains only to the erection or installation of interior marble, structural glass, slate or stone work, both natural and artificial (meaning by stone, any work manufactured from such foreign or domestic products as are specified and used in interiors of buildings by architects and customarily called "stone" in the trade) in any public or private building, and also, such work that has been done as the custom and practice in this area.**

**MARBLE MASONRY shall also consist of, but not be limited to, the following work procedures and installation of the following materials:**

**A. The carving, cutting and setting of all marble, slate, including slate blackboards, stone, albereen, carrara, saionyz, vitrolite, and similar opaque glass, scagliola, marbleithic, and all artificial, imitation or cast marble of whatever thickness or dimension. This shall apply to all interior work,**

**such as sanitary, decorative and other purposes inside of buildings of every description wherever required, including all polished, honed or sand finish; also the cutting and fitting of above materials after they leave mills or shops, as well as, all accessories to connection with such work, and the laying of all marble tile, slate tile and terrazzo tile.**

**B. All counters and lavatories constructed to vitrolite or carrara glass when used in mural decorations on buildings in place of marble or other decorations on buildings in place of marble or other stone or used in conjunction with marble or other stone panels on counters.**

**C. The setting of all cultured marble vanity tops.**

**D. The securing of marble, stone, or structural glass with rosettes, moldings, toggle bolts or screws, bolting and/or welding.**

**E. The setting, cutting, bolting and/or welding of steel struts used to anchor marble or stone.**

**F. When dowel holes are to be drilled in concrete or other materials to anchor materials handled and used by marble masons, the drilling of all dowel holes shall be performed by the marble masons. All anchor holes cut or drilled into marble, granite, slate and stone shall be performed by the marble masons regardless of the thickness of the material, such assignment to be consistent with trade practice.**

**G. When marble is taken down to be reset and used again and is cleaned or cut in the process, the work shall be performed by the marble mason, such assignments to be consistent with trade practice.**

**4. MOSAIC AND TERRAZZO WORK:**

**A. It shall be understood that the work "Terrazzo" refers to any kind of aggregates, whether crushed or manufactured and then crushed, regardless of the material they are made of or the name that they may be called, and then mixed with cement or any other building material in the right proportions in the regular way at the building, laid or installed to form a finish for any exposed surface, whether upon interior or exterior floors, stair treads, promenade roofs, garden walks, ceilings, swimming pools, window stools and aprons, toilets, bath and shower partition, mullion caps, cornices, etc., and all places where terrazzo may be used to form a finished surface for practical use, sanitary finish, or decorative purposes when installed by the usual terrazzo or mosaic methods.**

**B. Also, it shall be understood that the word "Mosaic" refers to all kinds of mosaics made of marble, stone, venetian enamel, venetian enamel type, or colored glass, whether mounted on paper or set loose (by hand) at the building, laid or installed to form a finish for any exposed surface, whether upon interior or exterior floors, stair treads, promenade roofs,**

**garden walks, interior walls, ceilings, swimming pools, and all places where mosaic may be used to form a finished surface for practical uses, sanitary finish, or decorative purposes when installed by the usual terrazzo or mosaic methods.**

**C. The laying of all terrazzo and mosaic where used for floors, walls, ceilings, walks, promenade roofs, stair treads, stair risers, fascia, newel soffits, window stools, and aprons, etc., also to prepare and set all concrete, cement, temporary grounds where projection in terrazzo occurs, or other foundations or material that may be required to properly set and complete such work; the building, shaping, forming, and constructing of all work also the imbedding or setting of all strips of metal or any other material which may be used to form joints in and for the terrazzo and mosaic work.**

**D. The installation of marble, mosaic, venetian enamel and terrazzo; the cutting and assembling of mosaics; the casting of all terrazzo in shops on jobs; all rolling of terrazzo work.**

**E. All scratch coat on walls and ceilings where mosaic and terrazzo is to be applied shall be done by plasterers, with an allowance of not less then one-half inch bed to be conceded to mosaic and terrazzo workers.**

**F. All bedding above concrete floors or walls, the preparation, cutting, laying, or setting of metal, composition of wooden strips and grounds and the laying and cutting of metal, strips, lath, or other reinforcement,**

where used in mosaic and terrazzo work.

G. All cement terrazzo, magnetsite terrazzo, Dex-O-Tex terrazzo, epoxy matrix terrazzo, exposed aggregate, rustic or riygh washed for exterior or interior of buildings placed either by machine or by hand, and any other kind of mixtures of composed of chips or granules of marble, granite, blue stone, enamel, mother of pearl, quartz, ceramic colored quartz and all other kinds of chips or granules when mixed with cement, rubber, neoprene, binylm magnesium chloride or any other resinous or chemical substances used for seamless flooring systems, and all other binding materials when used on walls, floors, ceilings, stairs, saddles or any other part of the interior or exterior of the building and also other work not considered a part of the building such as foundations, swimming pools, etc., also all other substitutes that may take the place of terrazzo work. The terrazzo worker shall have the right to use all tools which are necessary in the performance of his work.

H. Cutting and assembling of art ceramic and glass mosaic comes under the jurisdiction of the mosaic workers and the setting of same shall be done by the tile layers.

I. The finishing of cement floors where additional aggregate of stone is added by spreading or sprinkling on top of the finished base and troweled or rolled into the finish and then the surface ground by grinding machines, shall come under the jurisdiction of the terrazzo workers.

When no additional stone aggregate is added to the finished mixture, even though the surface may be ground, the work shall come under the jurisdiction of the cement finishers.

J. The installation of seamless composition and epoxy floor and base, exposed aggregate and plastic materials, including the use of color pigment, whether done by trowel, float, brush, roller, broom or any other process, shall be the work of the terrazzo mechanics.

K. The application of epoxy floors, decks and base toppings, matrix and stone embedded flooring, decks and base, such as Dex-O-Tex Neotex Industrial 67, Desco Armtex 306, Duron Selbatwede, and other similar products, whether applied with a trowel, float, brush, roller, broom or any other process, shall be the work of the terrazzo mechanic.

L. The installation of wire mesh or other types of reinforcing, when installed in conjunction with terrazzo, seamless composition, and epoxy flooring shall be the work of the terrazzo mechanic.

M. The application of all primers and sealers, such as Nuklad 100 and other similar products, whether applied with a trowel, float, brush, roller, broom or any other process shall be the work of the terrazzo mechanic.

5. TILE LAYERS' WORK: Tile laying shall consist of, but not be limited to, the following work procedures and installation of the

**following materials:**

**The laying, cutting or setting of all tile were used for floors, walls, ceilings, walks, promenade roofs, stair treads, stair risers, facings, hearths, fireplaces, and decorative inserts, together with any marble plinths, thresholds or window stools used in connection with any tile work; also, preparing and setting all concrete, cement, brickwork, or other foundation or materials that may be required to properly set and complete such work; setting or bedding all tiling, stone, marble, composition, glass, mosaic, or other materials forming the facing, hearth or fireplace of a mantel, or the mantel complete, together with the setting of all cement, brickwork, or other materials required in connection with the above work; also the slabing and fabrication of tile mantels, counters and tile panels of every description, and the erection and installation of same; the building, shaping, forming, construction of repairing of all fireplace work, whether in connection with a mantel hearth facing or not, and the setting and preparing of all material, such as cement, plaster, mortar, brickwork, iron work or other materials necessary for the proper and safe construction and completion of such work, except that a mantel made exclusively of brick, marble or stone, shall be conceded to be brick-layers', marble setters' or stone masons' work respectively.**

**It will be understood that the word "tile" refers to call burned clay products, as used in the tile industry, either glazed or unglazed, and to all**

**composition materials made in single units up to 15" x 20" x 2", except quarry tiles larger than 9" x 9" x 1& 1/4', also to mixtures in tile form of cement, plastics and metals that are made for and intended for use as a finished floor surface, whether upon interior or exterior floors, stair treads, promenade roofs, garden walks, interior walls, ceilings, swimming pools, and all places where tile may be used to form a finished surface for practical use, sanitary finish or decorative purposes, for setting all accessories in connection therewith, or for decorative inserts in other materials.**

**All terra cotta called unit tile in sizes of 6" x 12" or under, regardless of method of installation, quarry tile 9" x 9" x 1 & 1/4 or less; split brick or quarry tile or similar material where the bed is floated or screeded and the joints grouted. Where the work is installed by tile layers, the grouting and cleaning shall be supervised by the mechanic. The bedding, jointing, and pointing of the above materials shall be the work of the craft installing the same. All clay products known as terra cotta tile, unit tile, ceramic veneer and machine-made terra cotta, and like materials in sizes 6" x 12" and less regardless of the method of installation. Where the preponderance of materials to be installed comes within the provisions of this Section and when there is also some material in excess of the sizes provided for in this Section, the tile setter shall install all such materials.**

**A. The parties agree that a contractor shall assign all work in**

accordance with area practices, jurisdictional agreements or decisions of record of the National Joint Board for Settlement of Jurisdictional Disputes in the Building and Construction Industry in effort under the agreement between the Associated General Contractors of America, Inc., and the Building Trades Department, AFL-CIO, which terminated on September 30, 1969.

## ARTICLE II - PRINCIPLES

The principles upon which this Agreement is based are:

1. There shall be no limitation to the amount of work a Tile Layer, Marble Mason, Terrazzo Worker, and Finisher/Helper shall perform during the working day; it being understood that all workers employed shall perform an honest day's work.

## ARTICLE III - UNION SECURITY, EMPLOYMENT AND SUBCONTRACTING

1. All journeymen and apprentice employees, referred to herein as "Tile Layers, Marble Masons, Terrazzo Workers, and Finisher/Helpers", employed by the Contractors on the date hereof who are members of the Union shall remain members for the duration of the Agreement as a condition of employment, and those Tile Layers, Marble Masons, Terrazzo

Workers, and Finisher/Helpers not members shall become members of the Union within eight (8) days of the date of this Agreement, the date of execution of this Agreement, or the date of their employment, whichever is the latest, and shall remain members of the Union for the duration of this Agreement as a condition of employment.

Nothing herein shall require the Union to accept into membership any applicant, since Union membership is solely within the Union's discretion. But no Tile Layer, Marble Mason, Terrazzo Worker, and Finisher/Helper denied Union membership after having duly made application shall be denied employment or discriminated against as a result of denial of membership.

In the event the Union desires to incorporate into this Agreement during the term of any renewal thereof a form of Union security not herein set forth, the Contractors agree to incorporate into this Agreement said form of Union security, provided it is at that time authorized by the laws of the United States and the State of Rhode Island.

2. Contractors shall employ apprentices registered with the Joint Apprenticeship Committee of the parties and qualified journeymen. Contractors or their foremen can freely hire or reject at the jobsite applicants for employment, provided employees selected shall be qualified journeymen.

3. In the event the Contractors are unable to employ a sufficient number of qualified journeymen at the jobsite, they will give the Union an

**equal opportunity to furnish employees and will at the time notify the Union, orally or in writing, of the location, starting time and approximate duration of the work, the type of work and the number of employees required. The Contractors shall be under no obligation to hire any employees recommended by any source of employment. The Contractors shall notify the Union in writing of the hiring of any employee who was not recommended by the Union within five (5) days of his employment.**

**4. There shall be no discrimination against any workman by reason of color, race, creed, sex or national origin.**

**5. The Contractors agree to deduct from Tile, Terrazzo, and Marble Masons the amount of one dollar forty seven cents ($1.47) per hour worked as the hourly portion of Union Dues. The Contractors further agree to pay any additional amounts indicated by the Union for Dues Check-Off at the time the Union notifies the Contractors of the disbursement. The Contractors also agree to deduct one (1) cent per hour worked as a contribution to the Bricklayers and Allied Craftworkers Political Action Committee and four (4) cents per hour worked as a contribution to the Rhode Island Bricklayers Political Action Committee from the weekly pay of each employee who has authorized such deductions in writing as provided in subparagraph (a). Deductions shall be made from the pay of each employee who is or who becomes a member of the Union within the scope of the bargaining unit and**

**is covered by this Agreement, provided such employee has voluntarily authorized the Contractor by who he is employed to do so in writing in accordance with the "Check-Off Authorization" form set forth in subparagraph (a).**

**6. The Contractors agree to deduct from Finisher/Helpers the amount of one dollar thirty two cents ($1.32) per hour worked as the hourly portion of Union Dues. The Contractors further agree to pay additional amounts indicated by the Union for Dues Check-Off at the time the Union notifies the Contractors of the disbursement. The Contractors also agree to deduct one (1) cent per hour worked as a contribution to the Bricklayers and Allied Craftworkers Political Action Committee and four (4) cents per hour worked as a contribution to the Rhode Island Bricklayers Political Action Committee from the weekly pay of each employee who has authorized such deductions in writing as provided in subparagraph (a). Deductions shall be made from the pay of each employee who is or who becomes a member of the Union within the scope of the bargaining unit and is covered by this Agreement, provided such employee has voluntarily authorized the Contractor by whom he is employed to do so in writing in accordance with the "Check-Off Authorization" form set forth in subparagraph (a).**

**CHECK-OFF AUTHORIZATION**

**This is to authorize any of the various individual Employers who are**

**covered by the collective bargaining agreement between Associated General Contractors of Rhode Island hereinafter referred to as the "Employer" and Bricklayers and Allied Craftworkers Local #1 Rhode Island hereinafter referred to as the "Union" effective March 4, 1974, including any renewal thereof and by whom I may be employed during the term of such agreement or any renewal, to deduct from my wages and transmit monthly (accompanied by an accounting stating the name of each person whose dues are being paid and the number of hours each has worked) to said Union (or to any agency designated by said Union for the collection of said money), the sum per each hour worked which the Union has specified as the portion of my union dues subject to check-off, through procedures conforming to its constitution and by-laws and the Labor-Management Reporting and Disclosure Act of 1959, and by formal written notice to the Employer. This authorization shall be irrevocable for the period of one year following the date it was signed or until current collective bargaining agreement expires, whichever occurs sooner. This authorization shall be automatically renewed from year to year, unless sixty (60) days prior to the termination of the annual renewal date I revoke this authorization by written notice to the Union and to the individual Employer by whom I am employed. This is also to authorize the Employer (as identified above) to deduct from my pay the sum of _______ for each hour worked and to transmit that amount in the manner adopted**

by the Union to the Bricklayers and Allied Craftworkers Political Action Committee (BACPAC). This authorization is signed freely and voluntarily and not out of any fear of reprisal and with the understanding that BACPAC is engaged in a joint fund raising effort with the AFL-CIO and RIBPAC and will use the money contributed to make political contributions and expenditures as a separate, segregated fund used for the purposes allowed under the Federal Election Campaign Act 2 U.S.C. 441 b. as to federal elections and as to Rhode Island State and local elections for the purposes allowed under the Rhode Island Campaign Contributions and Expenditures Reporting Act, R.I.G.L. 17-25-1 et. seq. and that this voluntary authorization may be revoked at any time by, notifying the Employer and BACPAC in writing of a desire to do so.

This is also to authorize the Employer (as identified above) to deduct from my pay the sum of _______for each hour worked and to transmit that amount in the manner adopted by the Union to the Rhode Island Brick-layers Political Action Committee (RIBPAC). This authorization is signed freely and voluntarily and not out of fear of reprisal and with the under-standing that RIBPAC is engaged in a joint fund raising effort with the AFLCIO and BACPAC and will use the money contributed to that effort to make political contributions and expenditures as a separate, segregated

**fund for the purposes allowed under the Federal Elections Campaign Act, 2 U.S.C. 441 b. as to federal elections and to Rhode Island State and local elections for the purposes allowed under Rhode Island Campaign Contributions and Expenditures Reporting Act, R.I.G.L. 17-25-1 et. seq. and that this voluntary authorization may be revoked at any time by notifying the Employer and RIBPAC in writing of a desire to do so.**

**To authorize the deduction of supplemental dues, BACPAC and RIBPAC contributions, please sign and date this form.**

**To limit the authorization to the deduction to supplemental dues, BACPAC or RIBPAC contribution please check the appropriate box, sign and date this form.**

**DATE:____________________, ______**

**Social Security NO.________________**

**Signature_________________________**

**B. The Contractors shall pay Administration Services, Inc., 200 Midway Road, Suite 169, Cranston, Rhode Island 02920, as the agent of the Union, BACPAC and RIBPAC, or to any other person or persons designated by the Union to whom such payment may lawfully be made, thirty (30) days after notice in writing is given to the Contractors, the total sum deducted, on or before the twentieth day in the month following the month in which the deductions have been made for the period up to the end**

of the last complete payroll period in the preceding month.

7. The Contractors agree not to subcontract any work covered by the terms of this Agreement which is to be performed at the jobsite (construct-ion, alteration or repair of a building or structure) except to a contractor who holds an agreement with the International Union of Bricklayers and Allied Craftworkers or one of its subordinate bodies or who agrees in writing prior to or at the time of execution of the subcontract to be bound by the terms of this Agreement.

8. A. In order to protect and preserve, for the employees covered by this Agreement, all work heretofore performed by them, and in order to prevent any device or subterfuge to avoid the protection and preservation of such work, it is hereby agrees as follows: If and when the Employer shall perform any work of the type covered by this Agreement at the site of a construction project, under its own name or under the name of another, as a corporation, company, partnership, or any other business entity, including a joint venture, wherein the Employer (including its officers, directors, owners, partners, or stockholders) exercises either directly or indirectly (such as through family members) any significant degree of ownership, management or control, the terms and conditions of this Agreement shall be applicable to all such work.

B. All charges of violations of Section A of this Article shall be

**considered as a dispute under this Agreement and shall be processed in accordance with the procedures for the handling of grievances and the final binding resolution of disputes, as provided in Article VIII of this Agreement. As a remedy for violations of this Section, the arbitrator (or arbitration body) provided for in Article VIII is empowered, at the request of the Union, to require an Employer to (1) pay to affected employees covered by this Agreement, including registered applicants for employment, the equivalent of wages lost by such employees as result of the violations, and (2) pay into the affected joint trust funds established under this Agreement any delinquent contributions to such funds which have resulted from the violations, including such interest as may be prescribed by the trustees or by law. Provision for this remedy herein does not make such remedy the exclusive remedy available to the Union for violation of this Section; nor does it make the same or other remedies unavailable to the Union for violations of other sections or articles of this Agreement.**

**C. If, as a result of violation of this Article, it is necessary for the Union and/or the trustees of the joint trust funds to institute court action to enforce an award rendered in accordance with Section B above, or to defend an action which seeks to vacate such award, the employer shall pay any accountants' and attorneys' fees incurred by the Union and/or the fund trustees, plus costs of the litigation, which have resulted from the bringing of**

such court action.

9. When the Employer has any work specified in Article 1 of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by an agreement with another affiliate of the International Union of Bricklayers and Allied Craftworkers, the Employer agrees to abide by the full terms and conditions of the Agreement in effect in the jobsite area. Employees covered by this Agreement who are sent to projects outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Article IV of this Agreement but in no case less than the established minimum wage scale of the local Agreement covering the territory in which such work is being performed plus all contributions specified in the jobsite local Agreement. The Employer shall in all other matters be governed by the provisions established in the jobsite local Agreement. If employees are sent to work on a project in an area where there is no local Agreement covering the work specified in Article 1 of this Agreement, full terms and conditions of this Agreement shall apply.

## ARTICLE IV - WAGES AND HOURS

1. Eight (8) hours shall constitute a days work for the first five (5) days of the week. The working hours shall be from 8:00 a.m. to 12:00 noon and from 12:30 p.m. to 4:30 p.m.

2. In the event that a particular operation requests permission in

**writing or fax to deviate from the above hours within the hours of 7:00 a.m. to 4:30 p.m., such permission may be granted by the Business Manager.**

**3. Over-time shall be paid at time and one-half (1&1/2 times the hourly rate) for the first 2 hours worked outside of the established normal work day Monday through Friday as outlined in Article IV sec. 1 (a) and sec. 1 (b) and at double time (2 times the hourly rate) for all additional hours worked in the work day Monday through Friday. Time and one-half (1&1/2 times the hourly rate) shall be paid on Saturday, for work during the established normal work day and double time (2 times the hourly rate) for additional hours worked on Saturday, double time (2 times the hourly rate) shall be paid for all hours worked on Sundays and legal Holidays. The Legal Holidays are:**

| | |
|---|---|
| **New Year's Day** | **Thanksgiving Day** |
| **Memorial Day** | **Christmas Day** |
| **Fourth of July** | **Veterans Day** |
| **Labor Day** | **VJ Day** |
| **Columbus Day** | **Presidents day** |

**or any other declared by an Act of Legislature for which a permit from the Rhode Island Department of Labor to work and premium time for hours worked is required to be paid by law.**

**A. No work shall be performed on Labor Day unless to protect properly and life or in the case of extreme emergency.**

**B. The above listed Holidays are the only Holidays recognized**

**under this Agreement. Should any Employer observe any other Holiday (s) by shutting down job on said day, each Bricklayer & Allied Craftworker employed on the job who cannot be employed else where by Employer on said day shall be paid eight (8) hours pay for that day. Such alternate employment will be equally divided among Bricklayers & Allied Craftworkers on the job.**

**C. If any of the Holidays fall on Sunday, they shall be observed on the Monday following.**

**3. When a brass tab or time check is used on a project, and the job is large enough, a special window will be provided for Tile Layers, Marble Masons, Terrazzo Workers, and Finisher/Helpers to turn to their tabs at the end of the day. Tile Layers, Marble Masons, Terrazzo Workers, and Finisher/ Helpers shall be allowed five (5) minutes before quitting time for securing their tools at night.**

**4. Tile Mechanics and Finisher/Helpers working outside the established working hours performing such duties as preparing job assignments, loading vehicles, etc., shall be compensated the proper hourly wage.**

**5. The rate of pay for Tile Layers, Marble Masons, and Terrazzo Workers shall be as follows:**

**September 1, 2001 through February 28, 2002 - $24.40 per hour**

**The following represents increment increases which will be distributed be-**

tween wages and fringe benefits. The Local Union will notify the Contractor (30) days prior as to the amounts to place in wages and/or benefits.

| | |
|---|---|
| First Year | September 1, 2001 - February 1, 2002 - $0.95 per hour<br>March 1, 2002 - August 31, 2002 - $0.95 per hour |
| Second Year | September 1, 2002 - February 28, 2003 - $0.95 per hour<br>March 1, 2003 - August 31, 2003 - $0.95 per hour |
| Third Year | September 1, 2003 - February 28, 2004 - $0.95 per hour<br>March 1, 2004 - August 31, 2004 - $0.95 per hour |
| Fourth Year | September 1, 2004 - February 28, 2005 - $1.10 per hour<br>March 1, 2005 - August 31, 2005 - $1.10 per hour |

6. The rate of pay for Finisher/Helpers shall be as follows:

September 1, 2001 through February 28, 2002 - $22.33 per hour

The following represents increment increases which will be distributed between wages and fringe benefits. The Local Union will notify the Contractor (30) days prior as to the amounts to place in wages and/or benefits.

| | |
|---|---|
| First Year | September 1, 2001 - February 28, 2002 - $0.75 per hour<br>March 1, 2002 - August 31, 2002 - $0.75 per hour |
| Second Year | September 1, 2002 - February 28, 2003 - $0.75 per hour<br>March 1, 2003 - August 31, 2003 - $0.75 per hour |
| Third Year | September 1, 2003 - February 28, 2004 - $0.75 per hour<br>March 1, 2004 - August 31, 2004 - $0.75 per hour |
| Fourth Year | September 1, 2004 - February 28, 2005 - $0.90 per hour<br>March 1, 2005 - August 31, 2005 - $0.90 per hour |

7. Tile Layers, Marble Masons, Terrazzo workers, and Finisher/Helpers: there will be a free zone for all work performed within the geographical

**boundaries of the State of Rhode Island except for work performed on the Island of Block Island. For all work performed outside the geographical boundaries of the State of Rhode Island, travel will be reimbursed at a rate of thirty cents ($0.30) per mile round trip for an individual who uses his vehicle for transportation. If more than one individual is riding in the vehicle, only the driver will be reimbursed. Also, if the company provides a vehicle to be used for transportation, no travel allowance will be paid for the people using the company's vehicle for transportation.**

**A. Tile Layers, Marble Masons, Terrazzo Workers, and Finisher/ Helpers who are sent to work out of town or outside the City of Providence, and who require room and board accommodations shall have such expenses paid by the Employer at a minimum rate of fifty dollars ($50.00) per day, seven (7) days a week. If a Tile Layer, Marble Mason, Terrazzo Worker, or Finisher/Helper drives his personal automobile to such job, he will be paid at a rate of thirty cents ($0.30) per mile for the trip to the job and for the return trip at the end of the job. In the event a man/woman is sent on a day-by-day basis and no room and board is involved, the driver will receive the thirty cents ($0.30) per mile for the use of his/her car.**

**B. Should the living expenses, namely room and board only, be greater than that allowed the Employee, before he/she may receive additional expenses, he/she must show on a weekly basis all costs incurred and make a**

statement to the fact that all attempts have been made by him/her to kccp within the agreed allowance.

C. Any Tile Layers, Marble Masons, Terrazzo Workers, and Finisher/Helper who is sent to work outside the City of Providence shall be paid for the extra travel expense at an amount equivalent to the straight time rate, but not exceeding eight (8) hours in any one (1) twenty four (24) hour period, for his/her extra transportation and subsistence expenses.

8. Tile Layers, Marble Masons, Terrazzo Workers, and Finisher/Helpers sent by his employer to a jurisdiction where the rate of pay is in excess of that in Article IV, Sections 4 and 5, of this Agreement shall be compensated at the higher rate.

9. Tile Layers, Marble Masons, Terrazzo Workers, and Finisher/Helpers reporting for work upon request or implied request by his employer and not put to work for any reason except inclement weather or other conditions beyond the Contractor's control, shall be compensated three (3) hours pay and traveling expenses if they are applicable under Article IV, Section 4, 5, and 6.

10. Employees laid off before 12:00 noon shall be entitled to four (4) hours pay. Any employee laid off after 12:00 noon shall be compensated for a full day's pay. Employees shall be given thirty (30) minutes notice of the lay-off so that they may have adequate time to secure their tools. Pay day

shall be Wednesday of each week and employees are to be paid on the job before quitting time. Four (4) hours waiting time shall be paid if wages are not paid by quitting time. When an employee is discharged, he shall be paid in full, thereby giving him an opportunity to secure work again with as little loss of time as possible.

A. The Employer shall compensate his Employees for all tolls for bridges, freeways, and turnpikes upon submission of receipt. Where bridges, freeways, and turnpikes are used, mileage shall be compensated from the Providence City Hall. The Employer reserves the right to determine the route of travel.

B. On jobs over ninety (90) miles from Providence City Hall, the Employer agrees to pay the room and board allowance in advance for the first week of work if requested by an Employee.

C. The Employer agrees to carry Workman's Compensation Insurance for its Employees and appropriate insurance for using their automobiles as transportation that has been authorized by their Employer.

D. Tile Layers, Marble Masons, Terrazzo Workers, and Finisher/ Helpers working in the area commonly recognized as downtown Providence shall be reimbursed once a week for parking in the parking lot within the closest proximity of the jobsite at a rate of up to ten dollars ($10.00) per day upon presentation of their parking receipts.

11. The work week shall end on Saturday, pay shall be on Wednesday of the same week. When a holiday occurs on a Monday, a written request or fax to the Union for pay day to be changed to a Thursday, such permission may be granted by the Business Manager. When a holiday occurs on Wednesday, pay day shall be on Tuesday, with the week ending Sunday.

12. There shall be no lost time on the day of a minor injury for a Tile Layer, Marble Mason, Terrazzo Worker, and Finisher/Helper obliged to receive medical attention and treatment.

13. Any employee reporting for work or any shift, subject to first hire, who is not put to work, shall receive three (3) hours show up time unless notified not to report the day before by his foreman or employer.

14. The Employer shall furnish proper working tools for each job, such as but not limited to, straight-edges, rods, laths, strip cutters, mixing boxes, soaking tubs, sponges, sawdust, squeeges, hack-saw blades, files, drills, and pails. The Contractor also agrees to sharpen all chisels.

15. Payment may be made by check on all jobs when the Contractors shall post a bond with surety furnished by any company authorized to do business in Rhode Island, in the amount of fifty thousand dollars ($50,000), guaranteeing to the Union the payment of wages of all employees, and Health & Welfare, Pension, Apprenticeship, Industry Advancement Fund and Annuity Fund contributions in the amounts and at the time set forth in this Agree-

ment. A copy of the bond will be sent to the office of the Union, Post Office Plaza, 150 Midway Road, Suite 153, Cranston, Rhode Island 02920-5743.

## ARTICLE V - FOREMAN AND CONDITIONS

1. In order to maintain sufficient number of skilled workmen for the area, and in conjunction with area practices as established over the years, it shall be part of this Agreement that in all operations within the jurisdiction of Local #1 an equitable amount of workmen covered by this Agreement will be apportioned by the Employer in accordance with the following formula:

A. The foreman shall be designated by the Contractor.

B. The next three (3) Journeymen shall be Local Union area Journeymen, one of whom will be designated as Shop Steward by the Union.

C. The fourth Journeyman may be from another area.

D. All additional Journeymen shall be apportioned on the basis of a ratio of three (3) Local Union area Journeymen to one (1) Journeyman from another area.

E. Contractors shall also employ apprentices registered with the Joint Apprenticeship Committee at the ratio of one (1) Apprentice to five (5) Journeymen Tile Layers, Marble Masons, Terrazzo Workers, and Finisher/ Helpers on a job when indentured Apprentices are available and assigned to the Employer by the Joint Apprenticeship Committee or its Representative.

F. There will be no reciprocity with other states concerning employment of Apprentices while Rhode Island indentured Apprentices are available.

**G. When a layoff occurs, Journeymen who are residents of an area other then the areas covered by the terms of this Agreement shall be the first to be laid off. This clause shall not apply to the continued employment of foremen.**

**H. No employees shall be terminated or subject to discipline without just cause.**

**I. Foremen having the authority to exercise supervisory functions are recognized as the exclusive representatives of management. Foremen shall be practical mechanics in the branch of trade over which they exercise supervision and member of the International Union of Bricklayers and Allied Craftworkers.**

**3. On any job, doing any type of work, either new work or repair work, where six (6) or more Journeymen are employed, a Tile Foreman shall be paid twenty (20%) percent over the Journeyman rate of pay. The Foreman shall be paid twenty (20%) percent over the Journeyman rate of pay, during the regular hours of the work week from Monday through Friday to include no lost time for Holidays or inclement weather. All Foremen shall be guaranteed a forty (40) hour week at the regular rate of Foreman's wages.**

**4. Foreman: only Journeymen Tile Layers, Marble Masons, Terrazzo Workers, and Finisher/Helpers Foreman shall give instructions to the Tile Layers, Marble Masons, Terrazzo Workers, and Finisher/Helpers. Foremen**

must be members of I.U. of BAC.

5. Deputy Foremen, when appointed by a Contractor, shall be paid eighty cents ($0.80) per hour above the Journeyman rate of pay.

6. It shall be the function of the Foreman to tell the employee what he wants done, how he wants it done and see that the work is properly done. He shall be responsible for the placing of the men, assigning their tasks and maintaining safe working conditions, planning and effective execution of the work. When required, the Superintendent shall give instructions to the Tile Foreman, Tile Foreman shall then relay instructions to the Tile Mechanic or Finisher/Helper.

7. The Contractor shall also provide cold, sanitary drinking water and cups, in the immediate working station of the Tile Mechanics, and Finisher/Helpers.

8. During the morning working hours and afternoon working hours, at a time selected by the Contractor, an employee of any craft designated by the job superintendent shall obtain coffee, provided it is readily available at the jobsite, for each employee who desires it at his own expense.

9. Pre-job conference: It is agreed that upon a written request of either party a pre-job conference shall be held at least five (5) days prior to the commencing of work. It is further agreed that the Union may request and hold a joint pre-job conference with the Contractor and/or Subcontractor on an individual basis wherein the following items will be discussed:

**A) Work Schedules**

**B) Questions of jurisdiction and assignment of work.**

**It is understood that no agreement may be made at the pre-job conference which will, in effect, change, modify or abrogate the Labor Agreement in effect between the two parties hereto.**

**10. When Finisher/Helpers work with epoxy grout they shall receive one dollar ($1.00) per hour in addition to the Journeyman rate of wages.**

**11. When the tools of an employee are stored on the job site during non-working hours at a place designated by the Contractor, under lock and key, and there is loss thereof because of fire and theft by forcible entry, with clear evidence of such entry, during non-working hours, The Contractor shall be responsible for the replacement of such tools to a maximum of five hundred dollars ($500.00) provided the employee shall execute a form provided by the Contractor on the first day of employment, setting forth a list of tools the employment has on the site and shall furnish immediately to the Contractor a list of said tools destroyed by fire or loss by theft, given under oath.**

**12. Stewards shall not be hindered or interfered with in their performance of employee representation, or any grievance investigation.**

**13. When Tile Mechanics or Finisher/Helpers on a particular project are sent home due to inclement or winter weather, the Foreman and one (1) Apprentice may be allowed to remain on the job and work without the Tile**

Steward. If there is more than one (1) Apprentice on the project, the Employer and the Business Manager shall mutually agree on alternating system.

## SAFETY

1. The Employer agrees to conform to all rules and regulations prescribed by the Occupations Safety and Health Act and applicable Rhode Island Safety Law.

In order to protect the health and safety of employees against the ill-effects of silicosis and other respiratory diseases, the dry cutting of masonry units by means of hand-held, gas powered or electrical, portable "chop saws" and skill saws, and the dry grinding of masonry materials shall be prohibited on all new masonry projects, effective June 1, 2001. Employees engaged in wet cutting masonry products will be furnished elbow length gloves, an apron and goggles. No employees shall operate a wet saw unless provided with a wooden platform on which to stand and the saw is properly grounded.

The only exception to this provision will be when the Union and employer determine that the use of water is not feasible. When the Union and the employer identify such tasks, the employer must ensure that engineering and work practice controls are in place to control the dust: such as a vacuum with a high efficiency particulate air (HEPA) filter or another dust control system.

Respirators should only be used as the primary method of protection if other engineering and work practice controls are not feasible. When respirators are used, in accordance with OSHA regulations, employers must provide workers with full-face respirators as part of a complete respiratory protection program that includes the proper selection of respiratory cartridges, and training and fit-testing to ensure that the worker is able to wear a respirator.

Additionally, in the event the Union and the employer determine that dry cutting or grinding is necessary, the Contractor agrees to perform periodic air monitoring to ensure that silica exposure levels do not exceed the OSHA permissible exposure limit.

2. Dry masonry saws shall be equipped with an exhaust fan, a vent including an exhaust fan to outside of the building. Men/women working on saws must be furnished goggles, respirator and other safety equipment as may be required by OSHA.

3. The Contractor will provide rubber gloves, an apron, boots, goggles or glasses and other equipment necessary for operation of a wet saw.

## ARTICLE VI

## APPRENTICES AND INTERNATIONAL MASONRY INSTITUTE

1. Apprentices shall be registered at headquarters according to Article V of the I.U. Constitution. The Joint Apprenticeship Committee, as it presently exists, shall be continued for the duration of this Agreement and

apprentices shall be enrolled, trained and advance in accordance with rules and standards adopted by the Committee and approved by both parties. Any Contractor who executes a copy of this Agreement who is not a member of the party of the first part, shall at the time of execution thereof accept such rules and standards by executing a copy thereof.

A. Apprentices shall not work on a Tile cutting saw or cleaning down Tile walls or fastening Tile anchors or applying waterproofing material for an unreasonable length of time. A minimum of twenty five (25) hours of week laying Tile, Marble, etc. to ensure proper training.

B. The apprentice may operate the Tile saw and other cutting tools under the supervision of a Tile steward or foreman. The apprentice shall not perform other work than which is directly associated with the Tile trade.

C. The hours of work for apprentices shall be the same as those for journeymen employed in the trade. No apprentice shall be allowed to work overtime, if it interferes with his attendance at related instruction classes.

D. The foreman or whoever is in charge of Tile work shall be responsible for the training of apprentices.

E. If the apprentice does not have satisfactory attendance at school and work progress as determined by the joint committee, he shall be subject to such actions deemed necessary by the committee.

F. Apprentices shall be required to attend related instruction classes for a minimum of one hundred forty four (144) hours per year each year of their apprenticeship. Hours spent in related instruction shall not be paid for as such.

G. In case of failure of any apprentice to fulfill his obligations as to school, attendance and conduct, without due cause, the joint committee shall take necessary disciplinary action.

2. A. The wage rates of apprentices shall be the following percentage of the Tile Layers, Marble Masons, and Terrazzo Workers rate of wages set opposite each period of apprenticeship:

| Apprenticeship Period | Wage Rate |
|---|---|
| 1st 6 months | 50% of the journeyman's rate |
| 2nd 6 months | 55% of the journeyman's rate |
| 3rd 6 months | 65% of the journeyman's rate |
| 4th 6 months | 75% of the journeyman's rate |
| 5th 6 months | 85% of the journeyman's rate |
| 6th 6 months | 95% of the journeyman's rate |

2. B. The benefit package to be paid for all Apprentices shall consist of all benefits outlined in this Agreement except for the following conditions:

The Contractors agree to pay contributions for benefits to the "Rhode Island Bricklayers Health & Welfare Fund" for apprentices who are 50-55% of the journeyman's rate as outlined above in Section 2. (A).

**The Contractors agree to pay contributions for benefits to the "Rhode Island Bricklayers Health & Welfare Fund", and the "Rhode Island Bricklayers Pension Fund" for apprentices who are 65-75% of the journeyman's rate as outlined in Section 2. (A).**

**The Contractors agree to pay contributions for benefits to the "Rhode Island Bricklayers Health & Welfare Fund", "Rhode Island Bricklayers Pension Fund", and the "Bricklayers and Trowel Trades International Pension Fund" for apprentices who are 85-95% of the journeyman's rate as outlined in Section 2. (A).**

**2. C. Finisher/Helper apprentices per the State and Locals Standards.**

**INTERNATIONAL MASONRY INSTITUTE**

**3. A. The masonry industry in the United States and Canada has great and definable needs in the field of apprenticeship and training, advertising and promotion, research and development, and labor/management relations which must be met if the industry is to grow and prosper. The parties to this Agreement believe that the International Masonry Institute is the most effective and efficient instrument for meeting those needs because it offers the greatest possibility of integrating activities in these program areas in an effective manner and coordinating them through a single regional/ international system.**

**B. In order to properly finance IMI programs, the ultimate**

objective is to provide, through collective bargaining, contributions equal to three (3%) percent of the total hourly wage and benefits package; however, this figure is a goal that can only be reached in stages over a period of time.

C. As contributions from this geographical area increase, IMI will be able to devote a portion of those monies to advertising and promotion, research and development, apprenticeship and training, and labor/management relations programs directed specifically to this area.

D. In this Agreement, the parties intend to take a first step toward the overall objective by establishing a realistic level of support for IMI. With these principles in mind, the parties agree as follows:

The Contractors agree to pay ninety cents ($0.90) contribution to the Trust known as the International Masonry Institute (IMI), for Tile Layers, Marble Masons, and Terrazzo Workers, for each hour, or portion thereof, for which a covered employee receives pay.

The Contractors agree to pay seventy five cents ($0.75) contribution to the Trust known as the International Masonry Institute (IMI), for the Finisher/Helpers, for each hour, or portion thereof, for which a covered employee receives pay.

E. The payments required above shall be made to the International Masonry Institute, which was established under an Agreement

and Declaration of Trust, 14 March 1981, as the successor trust to the predecessor International Masonry Institute (established under an Agreement and Declaration of Trust, 6 November 1974).

F. Payments to the IMI be Contractors shall be made not later than the 20th day of the month for hours worked in the preceding month through the last complete payroll period. Failure on the part of a Contractor to make timely payments shall subject the Contractor to the same restrictions as set forth in Article VIII for the failure to pay fringe benefits.

G. The IMI shall execute the Escrow Agreement entered into by the Union, the Funds set fourth herein and the Employers setting up a one-check system, so-called, for collection of contributions from Employers fringe benefit funds and distribution thereof to the Funds.

## ARTICLE VII

## WELFARE, PENSION FUNDS, AND UNIFIED TRUST FUND

1. The Contractors agree to pay five dollars ($5.00) per hour worked by each Tile Layer, Marble Mason, Terrazzo Workers, and Finisher/Helper covered by the terms of this Agreement to the jointly administered welfare fund known as "Rhode Island Bricklayers Health and Welfare Fund". Said sum will be paid into the Fund not later than the twentieth (20th) day of each and every month for hours worked by Tile Layers, Marble Masons, Terrazzo Workers, and Finisher/Helpers up to the end of the last complete

**payroll period of the preceding calendar month. The Fund will be used to purchase accident and sickness disability insurance and hospitalization, medical surgical benefits and/or other welfare benefits of a similar nature for Tile Layers, Marble Masons, Terrazzo Workers, and Finisher/Helpers as provided in said Trust Agreement.**

**2. The Contractors agree to pay four dollars ($4.00) per hour worked by each Tile Layer, Marble Mason, Terrazzo Worker covered by the terms of this Agreement to a jointly administered pension trust and plan known as the "Rhode Island Bricklayers and Trowel Trades International Pension Fund" which shall be determined by the Union from the monetary increment increases due as per the terms of this Contract. The Union will notify the Contractor thirty (30) days prior to its implementation.**

**3. The Contractors agree to pay two dollars forty cents ($2.40) per hour worked for each Finisher/Helper covered by the terms of this Agreement to a jointly administered pension trust and plan, known as the "Bricklayers and Trowel Trades International Pension", pursuant to the terms of a participation agreement entered into by said pension fund and the parties hereto, provided said fund shall at all times be administered pursuant to the Taft-Hartley Act and the Employees Retirement Security Act of 1974, as amended, and is a "qualified" plan under the Internal Revenue Code. The foregoing sums will be paid into the plans not later than the twentieth day**

of each and every month for hours worked by Tile Layers, Marble Masons, Terrazzo Workers, and Finisher/Helpers up to the end of the last complete payroll period of the preceding month. The plans will be used for the purpose of providing retirement benefits for employees.

4. The Contractors agree to pay two dollars ninety cents ($2.90) per hour worked for each Tile Layer, Marble Mason, and Terrazzo Worker covered by the terms of this Agreement to a jointly administered retirement trust and plan known as the "Rhode Island Bricklayers and Allied Craftworkers Annuity Fund.

5. The Contractors agree to pay two dollars fifty cents ($2.50) per hour worked for each Finisher/Helper covered by the terms of this Agreement to a jointly administered retirement trust and plan known as the "Rhode Island Bricklayers and Allied Craftworkers Annuity Fund".

A. The Contractors, also, agree to pay any additional increases in contributions to the "Bricklayers and Trowel Trades International Pension Fund" which shall be determined by the Union from monetary increment increases due as per the terms of this contract. The Union agrees to notify the Contractors thirty (30) days prior to its implementation. The Fund shall be used to provide retirement benefits for the participants as provided in the trust and plan. Said sums will be paid into the Fund not later than the twentieth (20th) day of each and every month for hours worked by Tile

Layers, Marble Masons, Terrazzo Workers, and Finisher/Helpers up to the end of the last complete payroll of the preceding calendar month.

6. The Contractors agree to pay fifty cents ($0.50) per hour worked by each Tile Layer, Marble Mason, Terrazzo Worker, and Finisher/Helper covered by the terms of this Agreement to the jointly administered Unified Trust known as "Rhode Island Bricklayers Unified Trust Fund". The Contractors also agree to pay any additional increase in contributions to the Unified Trust Fund which shall be determined by the Union from any of the monetary increment increases due as per the terms of this contract, upon timely notification of said increase to the Association. Said sum will be paid into the Fund not later than the twentieth (20th) day of each and every month for hours worked by Tile Layers, Marble Masons, Terrazzo Workers, and Finisher/Helpers up to the end of the last complete payroll period of the preceding calendar month. The Fund will be used to help obtain employment, as provided in said Trust Agreement.

7. It is agreed that the Union, at its discretion, may withdraw the services of any Tile Layers, Marble Masons, Terrazzo Workers, and Finisher/Helpers covered by the terms of this Agreement from any Contractor who has failed to make payments of monies due any of the Funds set forth in this Article for each of two (2) consecutive months. It is further agreed that on payment of such past due monies to the respective Funds, the Union

will return such Tile Layers, Marble Masons, Terrazzo Workers, and Finisher/Helpers forthwith to the service of such Contractors.

8. Contractors who consistently fail to make payments timely to any or all of the Funds set forth in this Article may be required to make weekly payments and to file weekly reports on payday to the Funds to which they have failed to make such payments. This Section shall apply to any Contractor who has consistently failed to make payment to similar funds in the construction industry in the United States.

9. All attorney's fees, sheriff's costs, accounting and court costs incurred to collect contributions from a delinquent employer must be paid by the delinquent employer.

## ARTICLE VII - ARBITRATION

1. Both parties to this Agreement to settle all disputes, interpretative or otherwise, pertaining to or arising out of this Agreement, through an arbitration board composed of three (3) members of each party. The party aggrieved shall notify the other party at once in writing and a meeting to consider and to act upon the matter shall take place within three (3) days. (It is expressly understood that work is to continue during arbitration). If a tie vote exists, then the matter shall be submitted to the President of the Contractors' Association and a representative of the IUBAC. In case said officers are unable to agree to a solution of the controversy, the same shall

be settled by arbitration as herein provided. Each party shall designate an arbitrator and the two shall choose a third, and the three shall constitute an arbitration board. Both parties shall supply such arbitrators with all relevant data and information bearing on the controversy, and the cost of arbitration shall be borne equally by the parties to this Agreement. The award of any such arbitration board shall be final and binding on the parties, who agrees not to have recourse to any other tribunal or procedure. Pending the entry of a final award, it is agreed that there shall be no strike, lockout of stoppage of work, individually or collectively, on any job or project involved in the controversy.

Any dispute as to jurisdiction of work will be adjusted pursuant to the rules and regulations of the National Joint Board for the Settlement of Jurisdictional Disputes in the Building and Construction Industry then in effect and the parties agree to be bound by such rules and regulations.

2. This Agreement will expire on August 31, 2005, but if neither party to this Agreement gives notice in writing to the other party on or before July 1, 2005, that they desire a change after August 31, 2005, then this Agreement will continue and remain in full force and effect until August 31, 2005, and so on from year to year, until such notice has been complied with.

3. The Contractor, if found to be in willful violation of Article VIII, Section (1) by the Arbitration Board, shall bear all attorney fees, sheriff costs, accounting and court costs incurred.

## ARTICLE IX

**It is understood and agreed that any clause or stipulation in this Agreement found to be in violation of federal, state or municipal laws, shall be unenforceable and shall not affect the validity of the remaining conditions in this Agreement, which conditions shall remain in full force and effect.**

IN WITNESS WHEREFORE, the parties hereto have hereunto set their hands and seals this 11th day of September, 2001, for the new four (4) year Tile Agreement.

| | |
|---|---|
| CERAMIC TILE, MARBLE AND TERRAZZO CONTRACTORS ASSOCIATION OF RHODE ISLAND, INC. | INTERNATIONAL UNION OF BRICKLAYERS & ALLIED CRAFTWORKERS LOCAL #1 RHODE ISLAND |
| President | Business Manager |